**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 16-CV-0483-MSK

TINA ROCHELLE ALLEN,

    Plaintiff,

*v.*

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 16**), the Defendant's Response (**# 19**), and the Plaintiff's Reply (**# 22**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.    BACKGROUND

**A.   Procedural History**

Tina Allen seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. In March 2013, Ms. Allen filed for both DIB and SSI, claiming she became disabled on October 1, 2012. Tr. at 145–60. Her application was denied at all administrative

1

levels and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

**B.	Factual Background**

At the time of her alleged onset of disability, Ms. Allen was 38 years old and working out of her home, washing laundry for other residents of her apartment building. Tr. at 145, 230. She was previously employed as a cashier and a receptionist. Tr. at 201–08. Generally, Ms. Allen is obese and suffers from headaches, back pain, diabetes, depression, and asthma. Because the challenges on appeal focus only on physical limitations, the Court summarizes only the medical evidence relevant to its decision.

Ms. Allen's headaches first appear in the record in February 2013 when Ms. Allen presented to physician's assistant Elizabeth Madrid, complaining of headaches in the crown of her head that were getting more frequent. She told P.A. Madrid that Ibuprofen helped some. P.A. Madrid gave her a trial of Sumatriptan. Tr. at 305. Ms. Allen returned in March 2013 for further treatment for her headaches. P.A. Madrid treated her with Ibuprofen. Tr. at 299. Ms. Allen's headaches are not mentioned in treatment notes from visits to P.A. Madrid from July to October 2013. In November 2013, Ms. Allen reported to P.A. Madrid that the Sumatriptan helps some but not completely. Tr. at 502. The record does not contain any evidence of Ms. Allen's headaches for visits to P.A. Madrid in December 2013 or January 2014. Tr. at 488, 494. In February 2014, Ms. Allen reported to P.A. Madrid that the sumatriptan usually helped with headaches not the most recent one. In March 2014, P.A. Madrid noted an exacerbation in Ms. Allen's headaches and increased her sumatriptan. Tr. at 478. In April 2014, Ms. Allen's headaches are listed as a diagnosis for which P.A. Madrid ordered a neurological referral. Tr. at 468. After that, Ms. Allen made three visits to P.A. Madrid without any mention of headaches. Tr. at 442, 449, 459.

To combat her obesity, Ms. Allen engaged tried exercise and to lose weight. In late 2013,

2

Ms. Allen reported that she was walking on a treadmill for 15 minutes a day, watching what she ate, and started participation in a diabetes weight-loss group at the hospital. Tr. at 494, 502, 509. P.A. Madrid offered encouragement. Tr. at 494, 502. In January 2014, P.A. Madrid found progress and better control of Ms. Allen's weight loss. Tr. at 488. In July 2014, Ms. Allen reported that she had not been walking or exercising due to pain. Tr. at 449. In August 2014, P.A. Madrid noted that Ms. Allen was walking with a cane. Tr. at 442.

Only two medical opinions addressed Ms. Allen's physical functional limitations, one by her treating physician and physician assistant, Dr. Askenazi and P.A. Madrid, in August of 2014, Tr. at 432–37, and one by Dr. Claudia Elsner, a consulting, examining physician. Tr. at 420–24.

Dr. Askenazi opined that Ms. Allen was limited to occasionally lifting and carrying up to 10 pounds, to sitting without interruption for 20 minutes, and to standing and walking without interruption for 10 minutes. Tr. at 432–33. In an eight-hour workday, he observed that she could sit and walk for a total of two hours, and stand for a total of one hour. Tr. at 433. Dr. Askenazi stated that Ms. Allen required the use of a cane to ambulate and could not walk more than a block without it. Tr. at 433. These conclusions were supported by an MRI study that showed canal stenosis and severe degenerative facets between L4 and L5, as well as a disc bulge. Tr. at 433. Dr. Askenazi opined that Ms. Allen would be limited to never reaching or pushing/pulling and to occasionally handling, fingering, and feeling due to decreased sensation in both hands. Tr. at 434. He stated that she could never operate foot controls because of her neuropathy. Tr. at 434. Dr. Askenazi opined that Ms. Allen cannot engage in any postural activities, such as climbing, balancing, or crouching. Tr. at 435. He observed that she cannot tolerate any environmental factors, such as unprotected heights, humidity and wetness, or extreme temperatures because her condition is worsened by such factors. Tr. at 436. Due to her neuropathy, Dr. Askenazi further

3

opined that Ms. Allen could not go shopping, travel, ambulate on her own power, use public transportation, or sort papers, but could prepare simple meals and care for her personal hygiene, though she needs help doing so. Tr. at 437.

Dr. Elsner diagnosed Ms. Allen as suffering from with grade-3 obesity, diabetes mellitus type 2, and chronic lower back pain with documented degenerative joint disease plus lumbar spondylolisthesis. Tr. at 423. In her examination, Dr. Elsner found that Ms. Allen moved fluently in spite of her habitus, stood and walked normally without a limp. Tr. at 422. She also observed Ms. Allen could straight-leg-raise to 80 degrees, but reported immediate buttock pain on the right side over the sciatic spine. Tr. at 422. The range of motion in her cervical spine had commensurate extension and rotation with lateral bending without distress. Tr. at 423. Dr. Elsner also found some decreased internal hip rotation but thought it was conditional. Tr. at 423. Based on these findings, Dr. Elsner opined that Ms. Allen should limit standing to a maximum of about 10 minutes at a time, interrupt sitting every hour, and frequently change posture. Tr. at 423. Dr. Elsner stated that Ms. Allen cannot work crouched or squatting in small spaces and that her ability to walk is limited by back pains, lumbar pathology, and body habitus, but noted that these aspects were "not measured per se." Tr. at 423.

## C. The ALJ's Decision

In October 2014, the ALJ issued a decision unfavorable to Ms. Allen. At step one, the ALJ found that she had not engaged in substantial gainful activity after October 1, 2012. Tr. at 18. At step two, the ALJ found that Ms. Allen had the following severe impairments: morbid obesity, type II diabetes mellitus, migraine, depressive disorder, anxiety disorder, asthma, and chronic lumbar sprain/strain. Tr. at 18. At step three, he found that Ms. Allen did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20

4

C.F.R. Part 404, Appendix 1. Tr. at 19.

The ALJ found that Ms. Allen had the residual functional capacity (RFC) to perform sedentary work with the following limitations: lifting/carrying 10 pounds occasionally and frequently, sitting 6 hours per day with usual breaks, standing and/or walking 2 hours a day, and with a change in position between sitting and standing every 30 minutes; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she can meet the basic demands for unskilled work at substantially gainful levels, including following simple instructions, responding appropriately to supervisors, co-workers, and the public, adapting to routine work stresses, and sustaining adequate attendance; she can have occasional work interactions with supervisors, co-workers, and the public; and she can perform repetitive work at a specific vocational preparation level of 1 to 2. Tr. at 20–21.

Given this RFC, at step four, the ALJ found that Ms. Allen was unable to perform her past relevant work. At step five, the ALJ concluded that, considering Ms. Allen's age, education, work experience, and RFC, she could perform the following jobs in the national economy: call out operator, surveillance system monitor, and phone quote clerk. Tr. at 30.

In making this decision, the ALJ found that Ms. Allen's statements with regard to subjective symptoms were not entirely credible. Specifically, the ALJ stated that Ms. Allen's statements about the intensity and persistence of her headaches, medication side effects, sleeping habits during the daytime, and need to lie down were inconsistent with statements she made (or neglected to make) to medical providers. The ALJ gave little weight to Dr. Askenazi's functional capacity opinion and partial weight to Dr. Elsner's functional capacity opinion.

5

## III. STANDARD OF REVIEW

The Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).[1]

## IV. DISCUSSION

Ms. Allen argues that the ALJ erred in assessing her credibility, in evaluating the opinion of Dr. Askenazi, and that the RFC determination is unsupported by substantial evidence. The court begins with Ms. Allen's challenge to the evaluation of Dr. Askenazi's functional capacity opinion. Because the Court finds legal error in that assessment, it is not necessary to reach the other two claims.

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques *and* is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If the answer to either of these inquiries is "No", then the opinion is not accorded controlling weight. To give a treating provider's opinion less than controlling weight, the ALJ must give specific and legitimate reasons. Drapeau v. Massanri, 255 F.3d 1211 (10th Cir 2001). This requires that the

---

[1] On multiple occasions throughout her brief, Ms. Allen argues that various aspects of the ALJ's decision constitute an "abuse of discretion." As already noted, the Court's review is limited to ensuring that the decision is free from legal error and based on substantial evidence.

ALJ be specific in describing how the opinion is unsupported by clinical and laboratory diagnostic techniques, or identify the inconsistent with substantial evidence in the record. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If a treating physician's opinion is not given controlling weight, its relative weight must be asses in comparison to other medical opinions in the record. The factors considered for assessment of weight of all opinions are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). Again, with regard to relative weight assessments, the ALJ must provide legitimate, specific reasons for the weight assigned. Langley, supra at 1119.

As noted, Dr. Askenazi opined that Ms. Allen was largely limited in her physical activity, particularly in her ability to lift, carry, sit without interruption, stand and walk with frequency, push, pull, reach, or climb, among other things. Tr. at 432–37. He also stated that Ms. Allen requires a cane to ambulate and experiences limitations in daily activities due to her neuropathy. The ALJ gave this opinion little weight and did not include the limitations specified by Dr. Askenazi. Ms. Allen argues that the ALJ erred in giving little weight to the opinion of Dr. Askenaz. The Court agrees and finds that the error is legal error requiring reversal and remand..

The justification for giving Dr. Askenazi's opinion little weight is found in a single paragraph, that reads::

> These opinions carry little weight. The opinions are inconsistent with the record

7

as a whole, PA Madrid's treatment notes, and with Dr. Elsner's findings. There is no evidence the claimant required a cane to ambulate. PA Madrid consistently noted that the claimant's back pain is controlled with Endocet and that she was walking on a treadmill. As noted above, Dr. Elsner reported that the claimant 'moves fluently' considering her habitus, stood 'fine' for testing, walked with normal stride and posture, and did 'fine' with tandem, toe, and heel walk. Spine exam was normal, other than buttock pain roughly over the sciatic spine with right side supine straight leg raising. Cervical range of motion was normal, active shoulder abduction was 180 degrees, and there was normal range of motion of all other upper extremity joints. Lower extremity exam was normal other than some decreased internal hip rotation bilaterally that Dr. Elsner felt was likely conditional. The claimant was not using a cane at Dr. Elsner's exam, and confirmed that she walks her daughters down one flight of stairs and back up every day.

Tr. at 28.

The Court first notes that this explanation overlooks the obligation of the ALJ to first determine whether Dr. Askenazi's opinion was entitled to controlling weight before assigning it a relative weight. It appears that the ALJ simply jumped to the assessment of relative weight. Doing so constitutes legal error, but if the reasons articulated by the ALJ are sufficient for determining that Dr. Askenazi's opinion should not be given controlling weight, then the error is harmless. Thus, the Court considers whether the reasons given by the ALJ are sufficient for the determination that (1) Dr. Askenazi's opinion is not entitled to controlling weight, and for the determination that (2) it should be given little weight in comparison to other medical opinions iin the record.

Essentially, the ALJ found only one part of Dr. Askneazi's opinion to be inconsistent with other evidence in the record -  that Ms. Allen could not walk more than a block without a cane. The ALJ pointed to several examples of inconsistency. First, the ALJ stated that there was no evidence that Ms. Allen used a cane. This is factually inaccurate. *See* Tr. at 442. Second, the ALJ inferred that because Ms. Allen reported to PA Madrid that she used a treadmill up to 15 minutes per day,  that Ms. Allen did not need to use a cane. This inference is unfounded.

8

Indeed, it was P.A. Madrid who noted that Ms. Allen used a cane after she ceased being able to use a treadmill due to back pain. But moreover, the ALJ fails to explain how walking on a treadmill is inconsistent with the need to use a cane. Treadmills can be operated a various speeds and provide stability with handrails, thus absent evidence in the record as to the speed at which Ms. Allen walked and whether she used handrails, one cannot reasonably assume that use of a treadmill is inconsistent with the need to use a cane. Third, the ALJ points to Dr. Elsner's examination in 2013. Dr. Elsner observed that Ms. Allen stood "fine" and walked with normal stride and posture. The notations from this examination do not address use of a cane, expressly, and there is no indication that Ms. Allen's walking was observed over a long period of time or for a distance of a block. Indeed, viewing Dr. Elsner's observations and opinion in their totality, they are almost entirely consistent with Dr. Askenazi's opinion. Both opinions recognize medically discernable impairments in Ms. Allen's back that cause her pain and that together with her weight impair her ability to stand and walk. Indeed, although Dr. Elsner does not quantify the distance that Ms. Allen can walk, both opinions state that Ms. Allen can only stand for ten minutes. Finally, the ALJ points to Ms. Allen's ability to scale a flight of stairs each day. From this, the ALJ draws an inference that Ms. Allen does not require a cane to walk more than a block. It is unclear on what basis such inference is drawn, because there is no information to suggest that Ms. Allen does not use a cane or otherwise depend upon stair railings to go up and down the flight of stairs.

Although some of the specific evidence cited by the ALJ is relevant to assessment of Dr. Askenazi's opinion, his opinion is not inconsistent with specifics cited by the ALJ. Thus the Decision fails to state specific and legitimate reasons sufficient to conclude that Dr. Askenazi's opinion is inconsistent with substantial evidence in the record. As a consequence, Dr. Askenazi's opinion is controlling and the failure to adopt his functional limitations constitutes reversible error.

9

Even if not controlling, insufficient justification is given for according little comparative weight to the opinion.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for further proceedings consistent with this opinion. The Clerk shall enter judgment consistent herewith.

Dated this 17th day of November, 2017.

**BY THE COURT:**

_____
Marcia S. Krieger
United States District Court